On the case 14-2352, Karen Strehlke et al. v. Grosse Pointe Public School et al. Oral argument not to exceed 15 minutes per side. Joseph Osamor for the appellant. Please proceed. Joseph Osamor for the appellant, minor school children in the city of Grosse Pointe Farms. The appellants bring three issues in this appeal. The first issue is the premature dismissal or the premature grant of summary disposition of the constitutional claims without any opportunity for discovery. This court has stated in several cases that a grant of summary judgment without opportunity for discovery is inappropriate. In this particular case, the district court, during a studies conference, announced that it was going to force here a defendant's motion to dismiss pursuant to Rule 12b-6 in that if appellant's case survived the Rule 12b-6 motion, then it would set a plan for discovery. I heard there was a hearing where the district judge said, I'm going to treat this as a summary judgment. Is that okay with you? And both sides said okay. That's correct. But that was at the start of the hearing. But this was already decided three months earlier. And if the court decided to, after reading the briefs, to convert the motion into a Rule 56 motion, it could have advised the parties to prepare for a Rule 56 motion. Instead, the court waited until the start of the hearing to say that after reading your briefs, the court had decided to convert the Rule 12b-6 motion into a Rule 56 motion for summary judgment. And then you could have said, oh, Judge, I need to have discovery of X, Y, and Z under Rule 56. I need more time. That was said during the hearing. The court inquired whether there are any issues that have yet to be resolved. And the plaintiff said yes, that they needed information about the number of transfers in the school district before and after the policy was adopted. And we didn't have that information. That information was necessary to rebut the rationale that the school district was advancing for the policy. Why would the number of students, why would that have been a material fact? Because the number of students that have been excluded from this high school are about less than 12. While the district was granting several transfers, about 61 transfers from outside the school, outside the attendance area, to attend the high school. So the district cannot claim to be trying to manage the gap between the two high schools by excluding 12 students from this high school, and then transferring 61 students from the school that has the lower enrollment to the other school. It doesn't make sense. Besides, there is no requirement under state law that any school district... The premise of the way they designed this isn't to have the exact same numbers of kids in each high school. No, that's not true. That was the premise? That was not the premise. Right. Okay, keep going. Because in 1967, when the second high school was established, the high schools were located in two adjoining cities. And the municipal boundary of the host cities divided the school district into an equal house. Three cities north of the municipal boundary formed the north attendance area, and three cities south of the municipal boundary between the host cities formed the south high school attendance area. So originally, the whole of the farms went to the south school? For 40 years. I'm sorry, I missed you. For 40 years, from 1967 until 2008, all school children in the farms attended high school together at the south high school in the farms. There was no reason to exclude 12 students from this area of low property value homes in significant minority residence, to exclude them from attending high school with their peers and contemporaries from middle school at the high school in their city. What is your opposing side's statement of the reason that they did this? Pardon me? What did the school system say was their reason? The school system said that their reason was, first, that in 1967, a boundary was proposed to include this area of the farms in the north attendance area. But that was not so specifically stated. And in 1967, it was opposed by school electors in the farms, and that proposal was abandoned for 40 years. So that proposal was never put into effect? It was never put into effect. And as the affidavits of long-term residents in the Plantis area showed, their children, those of them that we were able to obtain affidavits from, their children attended high school in the south high school from 1980 until 2002. And there was no obstacle to any students living in the Plantis area of the town going to school with their peers and contemporaries from middle school at a high school. And the evidence that's in the record shows that there are only 12 students that this affects? It fluctuates every year. The year before, it was 10 students. Last year, it was 11 students. This school year, it's 9 students. So it's a very small number. Very small number of students. And the high schools, originally, each high school could accommodate 2,500 students. At one time, it was one high school, and the one high school could accommodate up to 3,000 students. And what is the population in the record of the two different schools' attendance? What numbers do they have? The north has how many and the south has how many? Currently, the north has about 1,300 students, and the south has about 1,500 students. And that's not very significant. If you recall that in 1967, when the two high schools, when the boundary was established, the north had 533 students more than the south high school. But over the years, the population of the cities that make up the south high school area and north high school fluctuated. At one time, one high school would have higher enrollment than the other. And there is no 1,500 students in the south high school. It's much less than 2,500 students that it used to have. And so there is no question of imbalance. The basic problem for your side is the rational basis test. Well, there's rational basis. Even they don't make the rational basis test because there has to be a legitimate end we're trying to attend, and that policy must be rationally related to the end. Yeah, although the Supreme Court has said that if a court can think of a rational basis, that's enough. It doesn't have to be their basis. I think that's the Supreme Court's current law. That is true. But also, there is involved the children's constitutional right to freedom of association with their peers and contemporaries from middle school in their city. And this court has said that the freedom of association, personal relationships, friendships, non-romantic friendships are protected under the freedom of association. And this court has said in Eckers v. McGinnis that where a state action interferes with the freedom of association, of intimate association, that state action is subject to either the rational basis review or the strict scrutiny review. And the court established a rule to decide whether the rational basis review applies or the strict scrutiny review applies. The court says that where a large or absolutely large... Why isn't it... let's just start with rational basis. Why isn't it rational to keep five elementary schools feeding one high school and five elementary schools feeding another? But that's a made-up... As Judge Moore said, in rational basis review, you don't actually look into exactly why they did it. Well, but there are five elementary schools in the south and five elementary schools in the north, which were already existing by virtue of the municipal boundary separating the two whole schools. There are five elementary schools north of the municipal boundary separating the two whole cities, and five elementary schools south. But there are only nine schools now. Now, because two of the elementary schools in the north combine to form one high school and form one elementary school. And besides that, there are five elementary schools that are parochial elementary schools, three of them in the south, two of them in the north. They didn't take that into consideration when they said they're trying to... If you win, the way this works is we'll have... How will it actually work out? Will there be an elementary school in Grosse Pointe Farms that some kids will go to one high school and some will go to the other? Is that how it will work out? It will not affect the elementary schools. The elementary schools have been in place since before the high schools were created. Now, I'm just making the point, isn't it true that... Won't the upshot be that some kids that are in one elementary school will go to one high school eventually and some will go to another high school eventually? If you're to win, that's what will happen, right? But, you know, where the kids attend elementary school has no bearing on this issue. Well, the reason I'm making the point is you talk about freedom of association and it seems you could talk about freedom of association of going to school with people in your exact neighborhood, but you might also have a freedom of association claim of continuing to go to school with people that are in your school. So if you win, there may be other people that have the same claim. On the elementary school level, the reason the school district advance for forcing children in this area of the city to go to the elementary school on the border in the other city is because there is a heavy traffic intersection between that area and the elementary school in the city. So they have a duty under the state school code to ensure the safety of school children to and from school. So they use that rationale. Plus they have the concept of this walk-to-school neighborhood schools. So if they want to reduce the number of traffic lights, you know, street intersections that elementary school children have to cross to get to their school. So in Plenty's case, their area is beyond a major traffic intersection. The school in their area is one block south and one block east. So the children cannot ride through the intersection to get to school. Many parents opposed being switched to the elementary school in the neighboring city, but they were allowed for 40 years. They were allowed the option to enroll their kids in the elementary school in the farms until 2008. When the school tried to use this 1967 border argument, they made it mandatory that if you live in this part of Grosse Pointe Farms, your children have to go to elementary school on the border with the farms. Because of that, many parents put their children in the Catholic schools, St. Paul's Catholic School in the farms. Some put their children at the University of Lagarde School, which is a private school. Some go to Grosse Pointe. If they are living in this particular geographic area, but they're sending their child to the Catholic school south, can their child then go to the south high school, or does it all depend on where the child lives? They still make their child go to the north school. Your red light has been on for quite a long time, so I think we should hear from the other side now. Yeah, but the thing is that at the high school level, the traffic intersection is of no consequence. Because in middle school, they go to school in the middle school, which is beyond, across the intersection, one block next to the elementary school. But I said your red light, I mean your time is up. Oh. So I think we should hear from the other side. Thank you. Good morning, Your Honors. I am Mark McInerney, along with my colleague, Nithya Lohitsa, representing the Grosse Pointe Public School System and the officials who are sued as defendants. Let me correct, I think, three factual points that came up during Mr. Ozemore's argument. First of all, the boundary between the two high schools was set in 1967, and it's the same boundary today. And it involved this portion of the farms going to the north. Is that right? 1967 forward. In the papers, in our motion, we attached an affidavit from the deputy superintendent with a map from 1967 showing that chunk of Grosse Pointe farms in the north district from day one. But he says that wasn't actually adopted? It was adopted. I think what Mr. Ozemore's point is that transfers were permitted. People were permitted upon request in the early years to go to south from that area. But the boundary was still in place. In 1995, the school board passed a new policy saying that once the population of either high school got to 1,500 or the gap between the high school's enrollments exceeded 300, transfers would be limited. That limitation happened in the year 2000, and since then, transfers have been limited from one to the other. What does the record show is the number of transfers that are allowed for people who live in the north to go to the south? The record does not address that issue, Your Honor. And wasn't there a statement at that motion hearing in front of the judge, the district judge, that there was a need for that information on transfers? Mr. Ozemore did request that information several minutes after he had said that he had no objection to Judge Duggan proceeding with treating this as a motion for summary judgment. Also, long after he had briefed the case and not provided an affidavit saying he needed more time for discovery under Rule 56D, and after he had brought his own motion. He wasn't briefing it. I'm sorry, was he briefing it with the understanding that it was going to be treated as a motion for summary judgment? He briefed it in response to my motion, and my motion was a motion under 12B-6 or alternatively under summary judgment. The status conference that Mr. Ozemore referred to took place in June after this motion was fully briefed. So I realize we're taking you in many different directions. Right, Your Honor. One basic question that I have is what is the rational basis for this policy that apparently says that 12 or so children who live in the farms are required to go to the north school rather than the south school? First of all, let me remind the court that it's approximately 12 per year. Right. High school is four grades, so that's a total of about 50 kids. The rational basis, and as Your Honor pointed out in questioning of Mr. Ozemore, we don't even have to make that showing under the rational basis standard and under the Heller case. But we did. The rational basis is that at the time this boundary was established in 1967, there were 10 elementary schools, and the Board of Education decided we're going to put five in one and five in the other. The boundary of Monteith Elementary School, which is the one in question, is the exact same boundary. Monteith is in Grosse Pointe Woods. Most of its students come from Grosse Pointe Woods, but the students who live in Mr. Ozemore's client's area in Grosse Pointe Farms also go to Monteith in Grosse Pointe Woods. So those boundaries are exactly the same. But given that one elementary school was closed, isn't that no longer a rational basis to have the five elementary schools to one and five to the other? It may have. The fact that it closed, I think, in the mid-'80s is when it closed. If it had been that way at the time in 1967, it might have done something different. In 1995, when the board amended its transfer policy to preclude transfers once these numbers were hit, the 1,500 or the 300 student gap, the number of elementary schools was no longer an issue at that point. It was the enrollment issue, and it was a balancing of enrollment type of issue. So what I'm wondering is, if the basis has changed, and the original rational basis isn't rational because it doesn't exist, the new rational basis is that there needs to be some kind of balance between the two schools, and we do the balance through our transfer policy, then isn't it vital to know what the transfer policy is in actuality? And shouldn't, when this became apparent at this August 12th hearing, shouldn't the district judge have allowed your opponent to get the information about transfers? Because the optics of this are a little bit difficult in that the way it's presented from the other side is that 12 kids from this area are not allowed to transfer. But somehow I got the sense that there were 60 or 70 transfers that were allowed, and I don't know if that's based on the record or what it's based on. I think it's based on error, Your Honor. Error? Error. Error. Okay. There's nothing in the record. Okay. There's nothing in the record about how many transfers there are or what the reasons are for transfers. I can tell the court as attorney for the school system that if there were a record, it would not support that at all. Are there any transfers? There are very few allowed for a particular reason. Sometimes a student may be interested in a particular course of studies that's taught at one school and not the other. There are transfers both ways for that sort of reason. But as a matter of fact, the volume that Mr. Osamor is imagining just isn't there. It's not in the record, so I can't say that it's a matter of record, but I can tell Your Honors that that is the case. The kids go to different middle schools, though, right? Right. There are three middle schools. So some of the kids, these kids are going to middle school with a group of kids and then separated from them for high school. That is correct. When you've got three middle schools and two high schools, that's almost inevitable. How does it work in terms of the middle schools? One goes to one high school, one goes to the other high school, and the other one is split? Is that it? That's the way it works out, just because of the geography of the situation. The school that's in the middle of the gross points is Brownell Middle School, and a certain number of those children go to South High School and a certain number go to North High School. Not a specific number. It's based on where they live. It's based on where the dividing line is. I seem to be talking about settlements, but it seems like this is a very small number of children that are involved, and it's curious, shall we say, that the school system felt it was worth litigating this. It's a small number of students, Your Honor, but it's in a situation, and this is a question one of the members of the panel asked Mr. Ozemore. In fact, the current, I should say the 13-14 school year, which was the current year when we were in the district court, the current enrollment at North High School is 1,322. The current enrollment at South High School was 1,707. That's a 385-student difference. If you take 50 who are now at North and move them to South, you've just increased that difference by another 100. And it's not a matter of running out of space. It's a matter of being able to offer certain courses. If there are not enough students to justify certain courses, then the students who are at North High School, for example, may not be able to take things if there just aren't enough students to justify a class. And that's what the situation is. It's not a matter of capacity, I believe. Mr. Ozemore is correct that at one point there were a whole lot more students at both of the schools. Now, the number of students in classrooms, the views of that have changed over the years. You don't have nearly as many kids in classrooms as you did when I was in school. So that's another rational basis that you're asserting. Yes. Yes, Your Honor. Does it matter that, I mean, initially these kids were separated from the rest of their community based upon a crossing? Otherwise they would have... Based upon... Based upon a crossing, a dangerous crossing. Well, I think that's Mr. Ozemore's speculation. There's nothing, no evidence of that in the record except his briefing. Are there any other kids, are there any other elementary schools that cross city lines? I believe the answer to that question is yes. But I'm hard-pressed right here to say, well, I know of one I can tell you. The Popat Elementary School, which is located in the small chunk of Harper Woods, and Your Honor knows the Detroit area, small chunk of Harper Woods is in our district, and that goes back historical reasons. Popat Elementary School is in Harper Woods, but probably the majority or at least a good number of their kids come from Grosse Pointe Woods. So they cross city lines. Grosse Pointe Shores does not have an elementary school, so its kids go to one of two Grosse Pointe Woods elementary schools. So there's all kinds of crossing that's going on. And Grosse Pointe, as you would imagine from a community that five communities use the word Grosse Pointe, it's not exactly an isolated type of situation. It's Grosse Pointe is Grosse Pointe. And so the fact that we're going from the farms to the woods to the shores is really not that relevant as it might be in other communities. It's very confusing to outsiders. I wish they had chosen some different names also. That seems like the best constitutional argument, just have one name for God's sakes. And one school system. Well, the politics of the situation in Grosse Pointe is not going to allow that, and I won't get into that. The school district wouldn't mind it, but the municipalities might. I think we've talked about the timing or the prematurity question sufficiently, unless the court has any other questions. One thing I'd like to point out, though, is that we originally brought this as a 12B6 motion, alternatively as a summary judgment motion. Judge Duggan chose to treat it only under Rule 56, but I think dismissal of this case under 12B6 was equally justified as it was under Rule 56, which takes out the prematurity question, because if you don't even consider the affidavits and look at it under 12B6, further discovery is irrelevant. And it should have been dismissed or could have been dismissed under 12B6 because on the equal protection argument, the plaintiffs have failed to negative, and I hate using that word as a verb, but the Supreme Court did it, so I will, negative any possible explanation, any rational basis, if you will, for the boundary that was drawn, both at the time in 1967 and as of today. I'm not sure that's so easy. I mean, I think our court's pretty careful about 12B6 and, you know, saying you've got to be sure there's no way there's any discovery out there that might bear on the question, and there are cases, even involving rational basis review, where there has been discovery. I can think of cases where there were trials about evidence to determine whether there was a rational basis. So it seems funny to think that it's a 12B6 issue. Well, and apparently Judge Duggan felt the same way, which is why he treated it as a Rule 56 issue. Maybe it's more appropriate even in the freedom of association context because we believe, and I think Judge Duggan essentially ruled this way, that the plaintiffs have failed to treat a, failed to plead an associational interest that is subject to protection under the freedom of association doctrine. They're talking about a hypothetical buddy situation with no evidence or allegations that students can't continue to be friends across city lines or across school boundary lines. There are kids who are friends of South High kids who are friends of North High kids and vice versa all over the place. And it's almost like they're saying that if you go to one high school, you can't be friends with the other, and that just can't be supported. What Judge Duggan found is that this associational interest or this relationship is much closer to the sort of relationship that is entitled to very little protection under the freedom of association rules. And that, to me, is 12B6 territory, dismissal for failure to plead a claim. So I think in that context, the 12B6 is even more important. If the schools are so, you've got a significant difference in enrollment now. Yes, Your Honor. I mean, looking at the map, you've got this little corner that's carved out, right? Well, it looks like a corner only because the spot that's opposite it is a golf course, and there aren't many kids. Yes, but there's a corner on the other side, too. So why didn't the line just get drawn across? What is that? What mile road is that on the south end? Seven mile. Is that Moross? Yeah. Why didn't the line just get drawn all the way across Moross? Because the decision was made in 1967 to make it coincident with the elementary school boundaries, and that was the elementary school boundary. But you changed the policy. The policy was changed in 1995 to require this balance of, you know, if the enrollment gets above this or if it's between 385. So, I mean, why not just draw the line straight across and include those people on the other side? And then you have a balance. You're suggesting that the southern line be drawn across? Right, instead of carving out that corner. So that more of Grosse Pointe Farms would be in the north district. And for purposes of balancing enrollment, that would probably help. The political consequences of that in the Grosse Pointe would be? But that's basically his argument, that politically you're able to carve out this little lesser income corner and say you go to north and you can't do that to the people on the other side. Well, after 50 years, Your Honor, making a change like that would be quite a drastic sort of situation. This has been that way, and the people who moved into that area knew if they asked or could have certainly found out where the boundary was from day one. But everybody's going to that school until 2008, right? Say it again? Everybody was going to south until 2008, right? No. I thought they were allowed to ask for transfers. They were allowed to ask for transfers. They were granted transfers. They were largely granted transfers until about 2000 when the contingency, when the conditions were hit with the 1,500 students and the 300 difference. When did that happen? 2000. Oh, I'm sorry. I thought it was 2008. There was a new policy. It was really reworded. It wasn't changed, but it was reworded in 2008 to further limit transfers to situations where the balance won't be set off or class sizes won't be affected. You go to the school in the district in which you live unless you can show that transferring would not mess with balance or size of classes or that sort of thing. It really isn't a substantive change. It's a wording change from what had been in place. What was put in place by the board in 1995 based on conditions that came into effect in 2000. Thank you. Thank you, Your Honors. One point I'd like to make, Your Honor. The plaintiffs did subpoena the transfer records before the status conference. That was the reason why the defendants asked the court to schedule a status conference. And then at the status conference, the court said that after the hearing on the 12-B-6, if the plaintiff's complaint survived, the court would schedule a discovery and we would obtain the records that we subpoenaed. So we did request the information on the transfer data. Secondly, the 1967 boundary was never implemented. There was a lot of controversy and it was shelved. It was never implemented. When you say it wasn't implemented, do you mean it wasn't passed or they didn't enforce the borders? It was not enforced because the Board of Education made that decision. The electors opposed it. And it caused so much controversy, so much convulsion in the school district that it was shelved. And, you know, all the farm students went to school in the South High School. Until 2008, that was when they implemented this policy 5-11, which we requested. We have not seen a copy of it. But until 2008, as the affidavits indicate, parents in our plaintiff's area of the farms sent their kids to South High School without any hindrance from the school board. Did they have to request a transfer? They didn't have to request a transfer. You simply indicate in your registration your choice. Because if you are in the South and you want to go to the North, they may allow you to go. Otherwise, if you indicate that you want your kids to go to South High School, there is no question. You don't have to give reasons why you want your kids to go to South High School if you are in the city that is in the South High School area of attendance. And this is shown in what kind of evidence? Is it in the affidavits of the parents? Affidavits of six long-term residents. Some of them have lived in the area for 60 years, 40 years, 30 years, before even the 1967 border was drawn. And as things stand today, all students in every city attend school together in the same high school except the 12 students or the children that live in this part of the farms. They're excluded from attending school with their peers and contemporaries in the farms. These communities are very seclusive. They have their every city has its own lakefront city park. Only residents go to the city park. These children from this part of the plaintiff's area, when they go to the city park, the Grosse Pointe Farms Park, they are overwhelmed by the Blue Devils, GP Blue Devils. Grosse Pointe Farms is the home of the Blue Devils. On the annual North-South game, there is so much solidarity at the city park. People displaying their GP Blue Devils pennants. These students from the plaintiff's area, they feel ostracized from their community. Their friends and peers from middle school, they all go to South High School. But they are sent to North High School where they don't know anybody. When they attended Monteith Elementary, they were just elementary school kids from kindergarten to sixth grade. When their social circle was very small, they were content with being friends with 10 students in their area that they know. At middle school level, the only reason that you can go across the border was proximity. If one middle school is closer to your home than the other, you go to the closer middle school. That was for the benefit of the students. In high school, there is no benefit to any student. There is no benefit to the students living in the plaintiff's area to go to high school in the north, away from their peers and contemporaries in their city. In elementary school level, it's for the benefit of the children, for their safety. They don't have to cross intersections to go to Kirby. There's no rationale for compelling 12 students to go to school in the north, away from their peers and contemporaries from middle school. They have not articulated any reason why these students should be sent to North High School when they transfer about 61 students from the North High School area. Where in the record is the transfer of 61 students? We stated that to the court, to the district court. That number was called up from the South High School directory. It shows the residents of 61 students being in the Grosse Pointe, Harper Woods, Grosse Pointe Woods, and Grosse Pointe Shores, the cities that are in the North attendance area. So that's where the number came from. Thank you very much. Thank you both for your argument. The case will be submitted. Would the clerk call the next case, please?